IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                          No. CR 08-1411 BB

EDGAR CALDERON-CID,

    Defendant.

COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW
AND
ORDER OF SUPPRESSION

THIS MATTER came on for an evidentiary hearing on November 3, 2008, on Defendant's *First Motion to Suppress Evidence* [Doc. 33], and having adduced all the evidence, considered the closing arguments, memoranda of law, and requested findings of fact and conclusions of law submitted by the parties, and being fully advised, the following are the Court's Findings of Fact and Conclusions of Law:

Findings of Fact

1.    From 10:00 PM on May 31, 2008, through June 1, 2008, at 1:00 AM, New Mexico State Police ("NMSP") conducted a checkpoint on Interstate 25 at the Algodones exit for the purpose of detecting individuals driving while intoxicated (DWI").

2.  **At approximately 1:00 AM on June 1, 2008, NMSP Officer Nava Marquez was working the checkpoint and encountered a white Nissan Quest bearing a Mexican license plate. The Nissan was driven by Edgar Calderon-Cid ("Calderon").**

3.  **Officer Marquez is a full time, salaried police officer. He is trained in and familiar with drug interdiction.**

4.  **Officer Marquez initially advised Mr Calderon, in the English language, the purpose of the stop and the checkpoint.**

5.  **Mr. Calderon advised Officer Marquez he did not understand English at which point Officer Marquez explained to Mr. Calderon , in somewhat broken Spanish, the purpose of the checkpoint.**

6.  **Officer Marquez asked Mr. Calderon if he had been drinking. Mr. Calderon advised Officer Marquez he had not been drinking alcohol.**

7.  **Officer Marquez did not detect any odor of alcohol on Mr. Calderon and also did not detect any signs of impairment or intoxication.**

8.  **Officer Marquez then proceeded to ask Mr. Calderon for his driver's license, vehicle registration, and insurance. Mr. Calderon produced a valid Mexican driver's license, vehicle registration, and insurance.**

9.  **Officer Marquez asked Mr. Calderon questions about why he did not have a valid New Mexico driver's license and how long he had been in New Mexico.**

|   |   |
|---|---|
|   | Mr. Calderon advised Officer Marquez that he had legally entered the United States earlier that day and was going to Santa Fe to visit a friend. |
| 10. | While Officer Marquez observed that Mr. Calderon appeared nervous, Officer Marquez had admittedly never met Mr. Calderon before and was not familiar with his mannerisms or demeanor. |
| 11. | After Officer Marquez received the proper documentation from Mr. Calderon and there were no signs of impairment or intoxication, Officer Marquez continued to detain Mr. Calderon at the checkpoint. |
| 12. | After obtaining Mr. Calderon's documents and confirming he was not intoxicated, Officer Marquez detected an odor of gasoline near or about Mr. Calderon's vehicle. |
| 13. | At the time Officer Marquez detected the odor of gasoline, he was standing in an area near idling vehicles nearby and vehicles in front of and behind Mr. Calderon's vehicle. Officer Marquez was also not able to determine whether the odor of gasoline he detected came from spilled gasoline on the exterior of Mr. Calderon's vehicle or the interior. |
| 14. | Officer Marquez had a hunch that something was not right with Mr. Calderon and his vehicle. However, the officer did not have reasonable suspicion to believe that a crime was being committed. |

15. **Armed with a hunch that something did not seem right, and uncertain of what step he should undertake next, Officer Marquez ordered Mr. Calderon to a secondary point on the side of the road. Mr. Calderon complied and drove his vehicle to the side of the road.**

16. **Officer Marquez made a recording of the encounter at the secondary area, but the State Police lost the recording.**

17. **After Mr. Calderon had provided Officer Marquez all of his documents, the officer held on to the documents until after Mr. Calderon had signed a consent to search form while at the secondary inspection area.**

18. **At this point, Officer Marquez gave Mr. Calderon a New Mexico State Police Consent To Search form written in Spanish and asked him to sign it, which he did. Officer Marquez observed Mr. Calderon read and sign the form. Officer Marquez asked Mr. Calderon if he understood the form, and he said he did. After Mr. Calderon signed the consent to search form, Officer Marquez returned Mr. Calderon's documents (driver's license, vehicle registration, and insurance) to him.**

19. **After Officer Salazar approached the secondary area with information on another stop, Mr. Calderon was questioned about whether or not he was traveling with another vehicle driven by Jesus Dominguez Mr. Calderon denied traveling with the other vehicle.**

20.     A certified narcotics detection canine, Chica, handled by Officer Zenderman, alerted to Defendant's vehicle.  This gave officers probable cause to search the interior of the vehicle.  Upon searching the vehicle, officers located roughly 182 pounds of marijuana concealed in the dashboard area and the gas tank.

## Conclusions of Law

1.     The DWI checkpoint was created and conducted in compliance with both federal and state law.

2.     When law enforcement pursues primarily general crime control purposes at checkpoints, stops can only be justified by individualized reasonable suspicion. *See Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000).  Therefore, in order for an officer at a checkpoint to expand the investigation of a motorist going through the checkpoint, the officer needs particularized and objective reasonable suspicion to believe the motorist is engaged in criminal activity.  *United States v. Galindo-Gonzales*, 142 F.3d 1217, 1221 (10th Cir. 1998).

3.     When the driver has produced a valid driver's license and proof that he is entitled to operate the vehicle, he must be allowed to proceed on his way, without being subject to further delay for additional questioning by police . *United States v. Sandoval*, 29 F.3d 537, 539-40 (10th Cir. 1994).

4. **When an officer stops a motorist for a particular purpose and that purpose is satisfied, further detention or questioning of the motorist exceeds the scope of the stop's underlying justification.  *See United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994).**

5. **An investigative detention may be expanded beyond its original purpose only if during the initial stop the detaining officer acquired reasonable suspicion of criminal activity.  *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995).  The officer must therefore acquire a particularized and objective basis for suspecting criminal activity of the particular person stopped, inchoate suspicions and unparticularized hunches do not provide reasonable suspicion.  *United States v. Tibbetts*, 396 F.3d 1132, 1137 (10th Cir. 2005) (citing *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994)).**

6. **The permissible duration of the stop is limited to the time reasonably necessary to complete a brief investigation of the matter for which the scope of the stop was intended.  *United States v. Dortch*, 199 F.3d 193, 199 (5th Cir. 1999).**

7. **The Tenth Circuit has repeatedly held that nervousness is of limited significance in determining reasonable suspicion.  *See, e.g., Fernandez, supra* at 879; *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997); *United States v. Hall*, 978 F.2d 616, 621 (10th Cir. 1992).  Signs of nervousness, failure to make eye contact, inconsistent stories, and different last names between passenger and driver are**

**not sufficient in themselves to establish reasonable suspicion.** *United States v. Pina-Aboite*, **109 Fed. Appx. 227, \*\*9 (10th Cir. 2004) (unpublished opinion).**

8. **A routine traffic stop may become a consensual encounter after the officer returns the driver's documentation, so long as a reasonable person under the same circumstances would believe he was free to leave or to refuse to answer the officer's questions.** *See United States v. Guerrero-Espinoza*, **462 F.3d 1302, 1308 (10th Cir. 2006) (citing** *United States v. Wallace*, **429 F.3d 969, 974-75 (10th Cir. 2005)).**

9. **The Tenth Circuit "follow[s] the bright-line rule that an encounter initiated by a traffic stop** *may not* **be deemed consensual unless the driver's documents have been returned to her."** *Wallace, supra; United States v. Bradford*, **423 F.3d 1149, 1158 (10th Cir. 2005) ("The return of a driver's documentation is not, however, always sufficient to demonstrate that an encounter has become consensual.");** *United States v. Burch*, **153 F.3d 1140, 1143 (10th Cir. 1998).**

10. **Illegal detention taints and invalidates a consent to search.** *See Florida v. Royer*, **460 U.S. 491, 507-08 (1983). Consent does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will.** *United States v. Chavez-Villarreal*, **3 F.3d 124, 127 (5th Cir. 1993).**

11. **Under the exclusionary rule, all evidence or contraband discovered as a result of an illegal detention or arrest is obtained in an illegal manner, and therefore must be suppressed.  *See United States v. Leon*, 468 U.S. 897 (1984).**

12. **Consent given during an illegal detention is presumptively invalid, *United States v. Cellitti*, 387 F.3d 618, 622-23 (7th Cir. 2004), and any evidence discovered in a subsequent search is inadmissible.**

13. **The fruit of the poisonous tree doctrine "bars evidence which, though not derived in an illegal search, was nonetheless acquired as a result of information or items obtained in the search." *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).**

14. **Mr. Calderon was unlawfully detained after demonstrating he was not driving intoxicated and after presenting proof of authorization to drive his vehicle. Officer Marquez sent Mr. Calderon to a secondary point based only on a hunch. Therefore, any evidence seized as a result of that unlawful detention must be suppressed.**

**All tendered findings and conclusions not incorporated herein are deemed Denied.**

**O R D E R**

**For the above stated findings of fact and conclusions of law, Defendant's** *Motion to Suppress Evidence* **is GRANTED.**

**DATED this 24th day of November, 2008.**

*[signature]*
_____
**BRUCE D. BLACK**
**United States District Judge**